James D. Carton, IV 026941991
CARTON LAW FIRM, L.L.C.
40 Union Avenue, P.O. Box 367
Manasquan, New Jersey 08736-0367
(732)223-1800
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------------------x
TRADER JOE'S EAST INC.,

                 Plaintiff,

v.

SELECTIVE FIRE AND CASUALTY INSURANCE
COMPANY,

                 Defendant.

-----------------------------------------------------------------------x

Civ. No. 2:17-cv05982

COMPLAINT AND JURY DEMAND

     Plaintiff, Trader Joe's East Inc., by way of complaint against Selective Fire and Casualty Insurance Company for the bad faith breach of an insurance policy, states as follows:

## PARTIES

1.     Trader Joe's East Inc. ("Trader Joe's") is a Massachusetts corporation with its principal place of business at 711 Atlantic Ave., Boston, Massachusetts 02111.

2.     Selective Fire and Casualty Insurance Company ("Selective") is a New Jersey company with its principal place of business at 40 Wantage Avenue, Branchville, New Jersey 07890.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as this is a civil action wherein the amount in controversy exceeds $75,000, and the parties are citizens of different states.

4. This Court has jurisdiction over Selective because it is incorporated and headquartered in the State of New Jersey, and purposely avails itself of the laws of the State of New Jersey by intentionally issuing insurance policies for property situated in the State of New Jersey.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) as this is the judicial district in which the property that is the subject of this action is situated and a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS GIVING RISE TO TRADER JOE'S CLAIMS

6. 155 Elm Street LLC ("155 Elm Street") and its predecessors in interest have continuously owned a commercial building, and land on which it is situated (together the "Demised Premises"), located at 155 Elm Street, Westfield, New Jersey, since at least the 1950s.

7. 155 Elm Street continuously maintained ownership of the Demised Premises throughout the events described in this Complaint regarding the roof collapse and subsequent property insurance claim.

8. In August of 1958, 155 Elm Street's predecessor in interest leased the Demised Premises to the Great Atlantic & Pacific Tea Company via an overlease ("Overlease"), which was periodically amended and renewed until the 1990s.

9. In 1997, Trader Joe's executed a sublease ("Sublease") with the Great Atlantic & Pacific Tea Company for the Demised Premises, and assumed the Overlease. This Sublease was set to expire on April 29, 2008.

10. In 1997, Trader Joe's executed a lease with 155 Elm Street ("Lease") to be effective when the Sublease expired on April 29, 2008 if Trader Joe's chose to remain at Demised Premises. The Lease contained two five-year terms and Trader Joe's exercised both the initial and second five-year option; thus, the Lease, with one amendment dated February 6, 2013, is in effect today.

11. The Lease's "Insurance" Section 10.01, under "Coverage and Amount," required 155 Elm Street to "maintain in respect of the Demised Premises, including the Building, an all-risk insurance policy including, but not limited to, fire insurance with extended coverage for the full replacement value thereof...."

12. The Lease did not require Trader Joe's to purchase or maintain any type of property insurance.

13. Lease Section 15.02(a)&(b), under "Fire, Damage and Destruction," required 155 Elm Street to restore the Demised Premises, including the Building, in case of damage or destruction by fire or other casualty. These provisions stated that 155 Elm Street's minimum repair obligation in the case of fire or another casualty was to provide a "basic building and [] replace[] any interior work which may have been originally installed at Landlord's cost."

14. To fulfill its obligation to obtain property insurance on the building, 155 Elm Street purchased from Selective a first-party property insurance policy numbered S2086412 containing a term of July 22, 2015 through July 22, 2016 and a blanket limit of $16,551,560 containing replacement cost coverage ("Policy").

15. On January 23, 2016, a structural beam in the insured building's roof failed under a heavy snow load.

16. 155 Elm Street promptly notified Selective of the roof collapse, cooperated with Selective, and fulfilled all conditions precedent to coverage under the Policy.

17. On January 29, 2016, the Town of Westfield Building Department issued a "Notice of Unsafe Structure" requiring that the insured building be demolished.

18. Despite the total loss of the insured building, Selective failed to pay the actual cash value of the destroyed building but instead initially advanced to 155 Elm Street $347,500 net of an applicable $2,500 deductible. This amount, as the later reconstruction costs would show, was less than 20% of the cost to replace the insured building.

19. 155 Elm Street began to demolish the insured building in order to fulfill its obligation under the Lease Section 15.02(a)&(b), "Fire, Damage and Destruction." 155 Elm Street, however, did not receive a full actual cash value payment from Selective for the insured building, and also did not receive from Selective a confirmation of full coverage for the insured building in the event of its replacement.

20. In this regard, Selective indicated to its insured, 155 Elm Street, that it did not owe for basic and essential parts of the insured building, including HVAC (including remote terminal units and associated ductwork), electrical wiring and equipment to remote terminal units, electrical wiring and devices on the ground floor and basement (exterior and interior), subpanels, a fire alarm system, smoke/carbon detectors, phone and speaker system, interior wall assemblies (metal studs, track, insulation, drywall, cedar trim), exterior doors, all acoustic ceiling

tiles and the supporting grid, bathrooms, storefront systems and awnings, and the building's exterior insulation and finish system (EIFS).

21. In other words, Selective refused to acknowledge coverage for a full, basic, complete building, but only a building without the essential items contained in Paragraph 20 of this Complaint.

22. Meanwhile, Trader Joe's goal was to mitigate the ongoing business income loss from the destruction of the store by ensuring the timely and expeditious reconstruction of the insured building.

23. In view of the lack of timely payment under the Policy from Selective and withholding of full coverage for the insured building, and commercial reasons, 155 Elm Street, in May 2016, agreed with Trader Joe's to retain Trader Joe's as Project Manager for the Store's reconstruction.

24. The insured building was reconstructed and re-opened by December 2016.

25. On March 7, 2017, over one year after the roof collapse and building demolition, Selective offered to pay 155 Elm Street for the damage to the insured building based on its building repair estimate of $1,794,950.58.

26. Selective, however, excluded from its "building" repair estimate basic and essential parts of the insured building.

27. Upon close examination of Selective's "building" repair estimate, the parts of the insured building that Selective refused to pay included the building's EIFS, exterior windows,

parts of the storefront, brick arch openings, entrance/exit doors, partitions and drywall, egress stairs and enclosures, parts of the rain water drainage systems, gas service and meter, roof curbs and structural penetrations, fire alarms, emergency lighting, branch wiring and distribution, exterior lighting, temporary heating system, bathrooms and domestic water system.

28. In a March 7, 2017 letter, Selective offered to pay the claim based on its "building" repair estimate, although Selective failed to advise its insured, 155 Elm Street, which parts of the insured building it would not cover. The above items in Paragraph 27 of this Complaint excluded by Selective could only be discerned by examination of its "building" repair estimate against a complete building repair estimate. Further, Selective's March 7, 2017 letter asked 155 Elm Street to swear in a proof of loss that the entire loss totaled $1,794,950.58, which is an amount that excluded the items in paragraph 27 of this Complaint.

29. An insurer's denial letter or partial denial letter must be clear and unequivocal and cannot be ambiguous or open to multiple interpretations. When denying or partially denying claims, insurance companies should provide a specific reference to the policy provisions on which they rely, and a written statement of facts explaining the denial.

30. Selective's March 7, 2017 letter did not cite the Policy provisions on which it based its partial denial of claim and did not factually summarize the reasons for the partial denial. Further, it sought to deceptively obtain 155 Elm Street's signature on a proof of loss that total amount of the covered loss was $1,794,950.58, an amount which excluded parts of the insured building.

31. On March 28, 2017, 155 Elm Street demanded that Selective pay the undisputed amount of $1,447,450.58 ($1,794,950.58 "building" repair estimate - $347,500 previously

advanced = $1,447,450.58) and fully reserved its rights under the Policy and at law to pursue further amounts owed by Selective. And, 155 Elm Street requested that Selective explain the basis of its partial claim denial.

32. In response to 155 Elm Street's March 28, 2017 letter, Selective, for the first time, advised 155 Elm Street in writing the reasons why it was denying 155 Elm Street's claim for parts of the insured building, and cited the Policy provisions on which it was relying to deny coverage. Selective issued that letter on May 4, 2017, over one year and three months after the roof collapse occurred.

33. Selective argued that 155 Elm Street did not have an insurable interest in the items in Paragraph 27 of this Complaint claiming that they were tenant's improvements and betterments. And, for the first time since the roof collapse occurred, Selective cited Policy provisions on which it was relying to partially deny the claim that purportedly exclude coverage when a tenant, and not an insured landlord, reinstalls tenant's improvement and betterments.

34. Further, Selective, without explanation, withheld from the claim payment change-order items for the reconstruction of the building that were identified during the re-building process.

35. Also in response to 155 Elm Street's March 28, 2017 letter, Selective issued a check for $1,447,450.58, but listed the *wrong insured* as the payee. Selective was promptly alerted of the erroneous payee on the check but waited until May 2017, weeks later, to re-send the check listing the proper insured.

36. On June 1, 2017, 155 Elm Street assigned the claim against Selective for loss arising from the January 23, 2016 roof collapse to Trader Joe's pursuant to, among other things, the New Jersey Supreme Court's recent decision in <u>Givaudan Fragrances Corp. v. Aetna Casualty & Surety Co.</u>, 227 N.J. 322, 327 (Feb. 1, 2017)("We hold that, once an insured loss has occurred, an anti-assignment clause in an occurrence policy may not provide a basis for an insurer's declination of coverage based on the insured's assignment of the right to invoke policy coverage for that loss").

37. Trader Joe's subsequently provided Selective with a copy of 155 Elm Street's Assignment of Claim and requested to meet with Selective for the purpose of discussing the claim and reaching a resolution.

38. Despite the valid claim assignment and clear liability for the claim, Selective failed and otherwise refused to accept the claim assignment, refused to meet with Trader Joe's, and continued to deny the claim. Its failure to adjust the claim directly with Trader Joe's has compelled this lawsuit.

39. Selective's claim positions are erroneous and lack a reasonable basis. The New Jersey Supreme Court ruled in 2017 that a post-loss assignment of claim is valid despite an anti-assignment provision in a policy. Further, 155 Elm Street is the insured building's owner and clearly had an insurable interest in parts of the insured building. Lastly, Selective has no reasonable basis to exclude from the loss settlement basic and essential parts of the insured building.

## COUNT I—BREACH OF CONTRACT

40. Trader Joe's repeats and realleges each and every allegation contained in paragraphs 1 through 39, inclusive, and incorporates them herein by reference.

41. 155 Elm Street's insured building was damaged by a roof collapse.

42. The Policy is a contract that required Selective to pay 155 Elm Street for damage arising from a roof collapse.

43. 155 Elm Street promptly notified Selective of the roof collapse, cooperated with Selective, and met all pre-conditions to coverage under the Policy.

44. Selective has refused to pay 155 Elm Street or Trader Joe's for parts of the building covered under Selective's Policy without a legitimate basis.

45. These items include the insured building's EIFS, exterior windows, parts of the storefront, brick arch openings, entrance/exit doors, partitions and drywall, egress stairs and enclosures, parts of the rain water drainage systems, gas service and meter, roof curbs and structural penetrations, fire alarms, emergency lighting, branch wiring and distribution, exterior lighting, temporary heating system, and bathrooms and domestic water system.

46. Selective also omitted change-order items incurred during the reconstruction of the building from its settlement of the building claim.

47. Selective owed a duty to 155 Elm Street to promptly acknowledge coverage, make a prompt actual cash value payment for the insured building, make a replacement cost

payment for the building, and to otherwise make available all Policy benefits to compensate 155 Elm Street.

48. Selective breached its duties and obligations under the Policy by failing to make available all covered sums, and by relying upon positions that are inconsistent with the Policy, so as to attempt to avoid its obligations imposed by the Policy and by applicable law.

49. As a result of these breaches, 155 Elm Street and Trader Joe's have been damaged in an amount exceeding $75,000.

50. Selective's refusal to fully compensate 155 Elm Street for damage to the insured building resulting from the roof collapse is a breach of the Policy, and Selective has therefore committed a breach of their contract with 155 Elm Street, which assigned its claim against Selective for the roof collapse to Trader Joe's.

### COUNT II—BREACH OF THE IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING

51. Trader Joe's repeats and realleges each and every allegation contained in paragraphs 1 through 50, inclusive, and incorporates them herein by reference.

52. Selective had a duty and obligation under the Policy to investigate and promptly acknowledge coverage for all covered items, and to promptly tender an actual cash value payment to 155 Elm Street for the destroyed insured building, which could have been used to facilitate the timely demolition and reconstruction of the insured building.

53. Selective failed to make any actual cash value payment for the insured building and instead advanced less than 20% of Selective's ultimate settlement of the building (and

Selective's $1,794,950.58 settlement relied on a "building" repair estimate that excluded basic and essential parts of the building).

54. Selective also indicated to 155 Elm Street, without a reasonable basis, that it would not pay the coverage it was contractually required to pay under the Policy by advising that it would exclude parts of the insured building from the loss settlement. It has also failed to fully compensate 155 Elm Street under the Policy for change-order items identified during the reconstruction of the insured building.

55. Selective unreasonably failed to acknowledge full coverage for the insured building which limited the potential funds available for reconstruction, generated an ongoing dispute, and delayed 155 Elm Street from proceeding with the timely demolition and reconstruction of the Building.

56. Selective knew that 155 Elm Street was considering allowing Trader Joe's to become project manager and lead the reconstruction of the building. With knowledge of this fact, Selective (i) denied 155 Elm Street the full benefits owed under the Policy by failing to make a prompt actual cash value payment for the insured building and indicating that it would not pay for significant parts of the building, and (ii) failed to alert or advise 155 Elm Street of Policy provisions that it knew it would assert to deny portions of 155 Elm Street's claim if Trader Joe's fronted the reconstruction costs and proceeded with the reconstruction.

57. Selective was promptly alerted of the January 23, 2016 roof collapse and subsequent demolition of the insured building, which was reconstructed by December 2016. Selective had no valid basis to delay the ultimate settlement of the claim for over a year until May 2017.

58.     Selective has repeatedly asserted that 155 Elm Street cannot assign its insurance claim pursuant to an anti-assignment clause in its Policy.

59.     Selective, to date, has failed to acknowledge that 155 Elm Street's June 1, 2017 Assignment of Claim is valid under clear New Jersey law, and thus has refused to adjust the claim with Trader Joe's.

60.     Selective disregarded the New Jersey Supreme Court's holding in Givauden that the post-loss assignment of an insurance claim (not a policy) is valid despite an anti-assignment clause in the policy under which the claim is made. This position has prevented the continued adjustment of the claim and necessitated this lawsuit.

61.     Selective's positions that 155 Elm Street, as owner of the insured building, did not have an insurable interest in parts of the building, and that parts of the building listed in Paragraph 27 of this Complaint are tenant's improvements and betterments, lack a reasonable basis under New Jersey law.

62.     The failure and refusal to recognize the Assignment of Claim and make or approve further payment under the Policy constitute a breach of the terms of the Policy and applicable New Jersey law without a reasonable basis.

63.     As a result of these bad faith breaches of the Policy, 155 Elm Street and Trader Joe's suffered damages equal to the sums they would be entitled to recover under the Policy. In addition, they have suffered consequential damages due Selective's wrongful, unjustified and inappropriate delay, failure to make adequate partial/interim payments, failure to process and pay 155 Elm Street's submissions in a timely fashion, improperly treating 155 Elm Street's and


Trader Joe's claims for coverage and imposing unwarranted disputes that wrongfully diverted 155 Elm Street from its restoration efforts. Such consequential damages were within the contemplation of the parties herein, at the time the Policy was sold, as natural probable results of a breach of contract.

64. Trader Joe's, as assignee of 155 Elm Street's claim, accordingly requests, in addition to entry of judgment for breach of contract, awarding the payment of consequential damages in accordance with New Jersey law.

65. WHEREFORE, Trader Joe's prays for judgment as follows:

(a) A judgment that 155 Elm Street's assignment of claim to Trader Joe's was valid under New Jersey law;

(b) A judgment that Selective has breached the Policy and that Trader Joe's is entitled to coverage as stated in the Policy;

(c) A judgment in favor of Trader Joe's and against Selective for the amount Trader Joe's is entitled to receive under the Policy, in an amount to be proven at trial; and

(d) A judgment awarding Trader Joe's actual damages, consequential damages, pre-judgment interest, post-judgment interest, counsel fees, costs and such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Trader Joe's hereby demands a trial by jury of all matters so triable.

Dated: August 9, 2017

                                          CARTON LAW FIRM, LLC

                                          _____
                                          JAMES D. CARTON, IV 026941991
                                          CARTON LAW FIRM, LLC
                                          40 Union Ave., PO Box 367
                                          Manasquan, New Jersey 08736-0367
                                          (732) 223-1800
                                          (*Attorneys for Plaintiff Trader Joe's East Inc.*)

Lead counsel:

Timothy G. Church
BRUCKMANN & VICTORY, LLP
420 Lexington Avenue, Suite 1621
New York, NY 10170
(212) 850-8500
(*Attorneys for Plaintiffs Trader Joe's East Inc.,
pro hac vice to be submitted*)

-14-